Ferman Sims v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-125-CR

FERMAN SIMS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Following a bench trial and conviction for the offense of “aggravated assault with a deadly weapon, to-wit: his foot,” Sims appeals in six issues the legal and factual sufficiency of the evidence (1) that his foot was used as a deadly weapon, (2) that he kicked the complainant, and (3) that the complainant received a bodily injury from the alleged kicking.  We affirm.

II.  Background

Laura Harris and Karen Anderson were having dinner on September 16, 2001 at the Ginger Brown’s restaurant.  At an adjacent table was Sims and his wife, Rhonda, and their child, whom Sims testified was ill and had just been taken to a clinic — he described the baby as “fussy.”  Harris asked Sims’s wife to move the child and testified that the woman responded that “if I didn’t like what the baby was doing that I could just step outside right now with her.”  According to Sims, Harris told Sim’s wife, “Why don’t you move the baby outside” and his wife stated, “Why don’t you just move yourselves outside.”  According to Harris, Sims and his wife were “super hyper criterial” toward the staff, the food, and the service at the restaurant the whole evening.  They were boisterous and argumentative.  Another patron in the restaurant was the complainant, Brock, who prior to an altercation with Sims, according to Harris, had been quiet and not belligerent to anyone.  Harris saw Sims go up to Brock, seemingly out of nowhere, after Rhonda told Sims “he flipped me off,” and punch him at least twice.  Brock ended up on the floor, and then Sims began “kicking him quite extensively.”  Sims kicked him in the face “and other places,” and was “clearly trying to injure him.”  Brock did not fight back; it appeared to Harris that the first or second punch had left him unconscious.  While Brock was being kicked on the floor, Rhonda came up to Harris and said, “I think we can just take care of our issue here now,” and swung at Harris, catching her slightly on the chin with her fist.  Anderson, who was calling 911, turned around and told Rhonda, “you can’t hit my friend,” and then she got hit harder than Harris, which knocked her back into the booth, resulting in a black eye and a bruised chin.  Next, a second man, who had earlier been with Sims and his wife, and who had previously existed the restaurant, came back into the restaurant and told Sims, “Come on.  We gotta get out of here, we gotta get out of here.  The police are coming,” at which point they ran outside.  It appeared to Harris that Sims only quit kicking Brock when the male came in from the outside and intervened. 

According to Brock, Sims, Rhonda, and another man with them, Chris, had been complaining to the waiter most of the time that Brock had been present in the restaurant.  During this time, Brock remained quiet until Sims’s female friend started “chewing out” the elderly lady who was the cashier, probably 75 to 80 years old.  While he was watching this occur, the women stopped “chewing out” the elderly lady and looked at Brock and said “What,” to which he responded “Do you cook at home?”  The women again said “What,” and Brock repeated the question “Do you cook at home?”  The lady then asked, “What does that have to do with anything?” and Brock responded “Well, because you come to this restaurant, they serve good food, they provide pretty good service, and all you’ve done is argue and complain with everybody that’s been here since you’ve been here.”  Sims then came up beside him, Brock “brushed him away” with his hand, and then Sims punched him in the head, leaving him unconscious. 

Brock ended up with bruises “all over, a cut one inch from [his] eye, and one inch from his template (sic).”  Photographs showed a swollen cheek, bruises around his neck, bruises inside his cheek, a swollen head, a skinned place on his back, and bruising all the way down to his chest.  Brock also testified that the pictures did not show all of the bruising that was on his body. Brock was hospitalized that evening for several hours, had stitches above and below one eye, a lot of pain and swelling in the face, and chipped teeth.  A year and a half after the accident, Brock could still occasionally feel the results of being hit near the eye.  

Sims’s version of the event was that he saw Brock standing, making fists, and holding a steak knife, gesturing toward his wife.  Sims then confronted Brock, who struck him with his hand on the face.  Sims then struck Brock about five times and a struggle ensued.  Sims then backed out of the restaurant and started walking to the truck, followed by Brock.  Sims denied kicking Brock at anytime. 

Sims was indicted for 

intentionally or knowingly caus[ing] bodily injury to Cass Brock by kicking Cass Brock and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit:  his foot, that in the manner of its use or intended use was capable of causing death or serious bodily injury. 

III.  Legal and Factual Sufficiency Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the judgment.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

IV.  Deadly Weapon

Section 1.07(a)(17)(B) defines deadly weapon as “anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.”  
Tex. Penal Code Ann.
 § 1.07(a)(17)(B) (Vernon Supp. 2004-05).

A foot is not a deadly weapon per se, but it can become a deadly weapon if in the manner of use, the foot is capable of causing death or serious bodily injury.  
See Clark v. State
, 886 S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.) (evidence supported finding feet used as deadly weapons where defendant struck and kicked two-year old child in manner capable of causing death);
 Hilla v. State
, 832 S.W.2d 773, 779 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d) (evidence supported finding that victim’s death caused by kicks from defendant’s foot).  An object is subject to an affirmative finding of a deadly weapon only when it is actually used in such a way as to cause death or serious bodily injury.  In other words, an object is a deadly weapon under section 1.07(a)(17)(B) when it is actually used in a manner which causes, or has the potential to cause, death or serious bodily injury.  
Hill v. State
, 913 S.W.2d 581, 591 (Tex.Crim.App.1996).  Consequently, the State was required to show beyond a reasonable doubt that [Sims’s] foot, in the manner of its use, was capable of causing death or serious bodily injury to [Brock].

Powell v. State
, 939 S.W.2d 713, 717 (Tex. App.—El Paso 1997, no pet.).

V.  Application

Having reviewed the evidence as a whole, we hold that the evidence was legally and factually sufficient that:  (1) Sims’s foot was used as a deadly weapon, (2) he kicked Brock with his foot, and (3) Brock received a serious bodily injury from the kicking.  As such, we overrule Sims’s six issues.

VI.  Conclusion

Having overruled Sims’s six issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 4, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.