COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-125-CR
  
  
FERMAN 
SIMS                                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Following 
a bench trial and conviction for the offense of “aggravated assault with a 
deadly weapon, to-wit: his foot,” Sims appeals in six issues the legal and 
factual sufficiency of the evidence (1) that his foot was used as a deadly 
weapon, (2) that he kicked the complainant, and (3) that the complainant 
received a bodily injury from the alleged kicking. We affirm.
II. Background
        Laura 
Harris and Karen Anderson were having dinner on September 16, 2001 at the Ginger 
Brown’s restaurant. At an adjacent table was Sims and his wife, Rhonda, and 
their child, whom Sims testified was ill and had just been taken to a clinic — 
he described the baby as “fussy.”  Harris asked Sims’s wife to move 
the child and testified that the woman responded that “if I didn’t like what 
the baby was doing that I could just step outside right now with her.”  
According to Sims, Harris told Sim’s wife, “Why don’t you move the baby 
outside” and his wife stated, “Why don’t you just move yourselves 
outside.”  According to Harris, Sims and his wife were “super hyper 
criterial” toward the staff, the food, and the service at the restaurant the 
whole evening.  They were boisterous and argumentative.  Another 
patron in the restaurant was the complainant, Brock, who prior to an altercation 
with Sims, according to Harris, had been quiet and not belligerent to 
anyone.  Harris saw Sims go up to Brock, seemingly out of nowhere, after 
Rhonda told Sims “he flipped me off,” and punch him at least twice. Brock 
ended up on the floor, and then Sims began “kicking him quite 
extensively.”  Sims kicked him in the face “and other places,” and 
was “clearly trying to injure him.”  Brock did not fight back; it 
appeared to Harris that the first or second punch had left him 
unconscious.  While Brock was being kicked on the floor, Rhonda came up to 
Harris and said, “I think we can just take care of our issue here now,” and 
swung at Harris, catching her slightly on the chin with her fist. Anderson, who 
was calling 911, turned around and told Rhonda, “you can’t hit my friend,” 
and then she got hit harder than Harris, which knocked her back into the booth, 
resulting in a black eye and a bruised chin.  Next, a second man, who had 
earlier been with Sims and his wife, and who had previously existed the 
restaurant, came back into the restaurant and told Sims, “Come on.  We 
gotta get out of here, we gotta get out of here.  The police are coming,” 
at which point they ran outside.  It appeared to Harris that Sims only quit 
kicking Brock when the male came in from the outside and intervened.
        According 
to Brock, Sims, Rhonda, and another man with them, Chris, had been complaining 
to the waiter most of the time that Brock had been present in the 
restaurant.  During this time, Brock remained quiet until Sims’s female 
friend started “chewing out” the elderly lady who was the cashier, probably 
75 to 80 years old.  While he was watching this occur, the women stopped 
“chewing out” the elderly lady and looked at Brock and said “What,” to 
which he responded “Do you cook at home?”  The women again said 
“What,” and Brock repeated the question “Do you cook at home?”  The 
lady then asked, “What does that have to do with anything?” and Brock 
responded “Well, because you come to this restaurant, they serve good food, 
they provide pretty good service, and all you’ve done is argue and complain 
with everybody that’s been here since you’ve been here.”  Sims then 
came up beside him, Brock “brushed him away” with his hand, and then Sims 
punched him in the head, leaving him unconscious.
        Brock 
ended up with bruises “all over, a cut one inch from [his] eye, and one inch 
from his template (sic).” Photographs showed a swollen cheek, bruises around 
his neck, bruises inside his cheek, a swollen head, a skinned place on his back, 
and bruising all the way down to his chest. Brock also testified that the 
pictures did not show all of the bruising that was on his body. Brock was 
hospitalized that evening for several hours, had stitches above and below one 
eye, a lot of pain and swelling in the face, and chipped teeth. A year and a 
half after the accident, Brock could still occasionally feel the results of 
being hit near the eye.
        Sims’s 
version of the event was that he saw Brock standing, making fists, and holding a 
steak knife, gesturing toward his wife. Sims then confronted Brock, who struck 
him with his hand on the face. Sims then struck Brock about five times and a 
struggle ensued. Sims then backed out of the restaurant and started walking to 
the truck, followed by Brock. Sims denied kicking Brock at anytime.
        Sims 
was indicted for
  
intentionally or knowingly caus[ing] bodily injury to Cass Brock by kicking Cass 
Brock and the defendant did use or exhibit a deadly weapon during the commission 
of the assault, to-wit: his foot, that in the manner of its use or intended use 
was capable of causing death or serious bodily injury.
  
III. Legal and Factual Sufficiency Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the judgment. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. at 485. 
In other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
IV. Deadly Weapon
        Section 
1.07(a)(17)(B) defines deadly weapon as “anything that in the manner of its 
use or intended use is capable of causing death or serious bodily injury.” Tex. Penal Code Ann. § 1.07(a)(17)(B) 
(Vernon Supp. 2004-05).
  
A foot is not a deadly weapon per se, but it can become a deadly weapon if in 
the manner of use, the foot is capable of causing death or serious bodily 
injury. See Clark v. State, 886 S.W.2d 844, 845 (Tex. App.—Eastland 
1994, no pet.) (evidence supported finding feet used as deadly weapons where 
defendant struck and kicked two-year old child in manner capable of causing 
death); Hilla v. State, 832 S.W.2d 773, 779 (Tex. App.—Houston [1st 
Dist.] 1992, pet. ref’d) (evidence supported finding that victim’s death 
caused by kicks from defendant’s foot). An object is subject to an affirmative 
finding of a deadly weapon only when it is actually used in such a way as to 
cause death or serious bodily injury. In other words, an object is a deadly 
weapon under section 1.07(a)(17)(B) when it is actually used in a manner which 
causes, or has the potential to cause, death or serious bodily injury. Hill 
v. State, 913 S.W.2d 581, 591 (Tex.Crim.App.1996). Consequently, the State 
was required to show beyond a reasonable doubt that [Sims’s] foot, in the 
manner of its use, was capable of causing death or serious bodily injury to 
[Brock].
 
 
Powell 
v. State, 939 S.W.2d 713, 717 (Tex. App.—El Paso 1997, no pet.).
V. Application
        Having 
reviewed the evidence as a whole, we hold that the evidence was legally and 
factually sufficient that: (1) Sims’s foot was used as a deadly weapon, (2) he 
kicked Brock with his foot, and (3) Brock received a serious bodily injury from 
the kicking. As such, we overrule Sims’s six issues.
VI. Conclusion
        Having 
overruled Sims’s six issues, we affirm the trial court’s judgment.
  
  
                                                                  PER 
CURIAM
 

  
PANEL 
F:   MCCOY, HOLMAN, and GARDNER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
August 4, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.